UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| CVENT, INC., and ONE CLIPBOARD, LLC d/b/a Splash,<br><br>*Plaintiffs*,<br><br>v.<br><br>JOYN EXPERIENCES, INC. d/b/a Zuddl,<br><br>*Defendant*. | Civ. No. 1:25-cv-1341 |

## DECLARATION OF SERINE CONSOLINO

Pursuant to 28 U.S.C. §1746, I, Serine Consolino, hereby declare as follows:

1. I am employed as a Partner at Aegis Law Group LLP ("Aegis"). The statements in this declaration are based on my personal knowledge.

2. On June 26, 2025, on behalf of Plaintiffs Cvent, Inc. and One Clipboard, LLC d/b/a Splash, I sent Zuddl's co-founders Bharath Varma and Vedha Sayyaparaju a cease-and-desist letter to their respective email addresses, bharath@zuddl.com and veddha@zuddl.com.

3. The letter noted that Zuddl's conduct violates at least two provisions of the federal Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*, and demanded that Zuddl "cease and desist all attempts to access the Splash Platform."

4. The June 26 letter demanded that Zuddl "cease and desist all attempts to access the Splash Platform" and asked Zuddl to identify "all instances where Zuddl (or any representative thereof) has accessed or viewed the Splash Platform, including (i) the date of access, (ii) the identities of any individuals who accessed the Splash Platform, and (iii) a description of all sites accessed." The June 26 letter further asked Zuddl to certify that it would "immediately refrain

from viewing or accessing or attempting to view or access the Splash Platform" and not "use, consult, rely on, or disseminate (whether internally or to any third party)" any Splash information. The following day, I sent the cease-and-desist letter to raj@zuddl.com and to the Oakley, California address identified on Zuddl's website.

5. To date, Zuddl has not responded to the June 26 cease-and-desist letter or otherwise corresponded with Splash since this dispute arose.

6. Also on June 26, I sent a cease-and-desist letter to CrowdStrike. CrowdStrike responded to the June 26 cease-and-desist letter with an unsigned letter from "CrowdStrike Legal" on June 30. CrowdStrike confirmed that it provided Zuddl with "view-only" access to the Splash platform, including viewer access to information and materials belonging to Splash, and that Zuddl's access had been "revoked." CrowdStrike's June 30 letter disclosed that it had instructed Zuddl to "refrain from use of any information or materials it may have accessed belonging to Splash," that it was actively investigating the matter, and that it was preserving relevant materials. A true and correct copy of the June 30 letter is attached hereto as Exhibit A.

7. On July 11, 2025, CrowdStrike sent me a second (also unsigned) letter, in which it further conceded that: (a) a CrowdStrike employee had granted Zuddl unauthorized access (b) CrowdStrike was subject to restrictions prohibiting such access, and (c) that the CrowdStrike employee who granted Zuddl access acted "without authorization." CrowdStrike stated that the employee had been "counseled and instructed not to repeat this conduct," and reiterated that Zuddl's access had been "revoked." A true and correct copy of the July 11 letter is attached hereto as Exhibit B.

8. On July 22, 2025, I sent a response to CrowdStrike's July 11 letter. I noted that the July 11 letter failed to address key questions about the unauthorized access, including identifying

"instances where Zuddl (or any representative thereof) has accessed or viewed the Splash Platform"; providing any communications between CrowdStrike and Zuddl; or providing screenshots of the information accessed. Splash reiterated its request for additional information from CrowdStrike addressing "the basic facts underlying the breach event" so that Splash could fully assess its risk and determine appropriate next steps. I also pointed out various inconsistencies and inaccuracies in CrowdStrike's correspondence.

9. On August 4, 2025, CrowdStrike responded to the July 22 letter, stating that Zuddl's access was "brief," limited to "approximately 30 minutes," and was made for the "sole purpose of viewing landing pages and registration confirmation emails" to assist in "supporting a system migration." A true and correct copy of the August 4 letter is attached hereto as Exhibit C.

I declare under penalty of perjury the foregoing is true and correct.

Dated: August 11, 2025 at Washington, D.C.

                                                                                         Serine Consolino

# Exhibit A



**CrowdStrike, Inc.**
 150 Mathilda Place
 Suite 300
 Sunnyvale, CA 94086

June 30, 2025

**Via Email**
 Serine Consolino
 Aegis Law Group LLP
 801 Pennsylvania Ave., N.W., Suite 740
 Washington, DC 20004
 sconsolino@aegislawgroup.com

**Re: Response to June 26, 2025 Letter Regarding Splash Platform**

Dear Ms. Consolino,

We acknowledge receipt of your letter dated June 26, 2025, on behalf of your clients, Cvent, Inc. and One Clipboard Inc. d/b/a Splash (collectively, "Splash"). We take the concerns outlined in your correspondence with the utmost seriousness.

Our understanding is that Zuddl no longer has any access—direct or indirect—to the Splash Platform. Our preliminary review also indicates that Zuddl was granted limited view-only access. We have also instructed Zuddl to refrain from use of any information or materials it may have accessed belonging to Splash.

We are actively investigating the matter and will respond further. In the meantime, we are preserving relevant materials.


Sincerely,

CrowdStrike Legal
legal@crowdstrike.com

# Exhibit B



**CrowdStrike, Inc.**
150 Mathilda Place
Suite 300
Sunnyvale, CA 94086

July 11, 2025

**Via Email**
Serine Consolino
Aegis Law Group LLP
801 Pennsylvania Ave., N.W., Suite 740
Washington, DC 20004
sconsolino@aegislawgroup.com

**Re: Response to June 26, 2025 Letter Regarding Splash Platform**

Dear Ms. Consolino,

We write in follow-up to our letter dated June 30, 2025, regarding the matter referenced in your June 26, 2025 correspondence.

After an internal review, we can confirm that the access to the Splash Platform was granted by a junior marketing employee at CrowdStrike who was unaware of any restrictions prohibiting such access. This individual acted without authorization and outside the scope of our company's practices. The employee has since been counseled and instructed not to repeat this conduct.

Our review further confirms that no Zuddl personnel accessed, obtained, retained, or used any Splash or Cvent confidential information. The limited view-only access granted to Zuddl was revoked, and we have received assurances from Zuddl that no information was stored or used in any manner.

We regret any inconvenience caused and appreciate your bringing this to our attention. Based on the findings above and our corrective actions, we consider this matter closed.



Sincerely,

CrowdStrike Legal
legal@crowdstrike.com

# Exhibit C



**CrowdStrike, Inc.**
150 Mathilda Place
Suite 300
Sunnyvale, CA 94086

August 4, 2025

**Via Email**
Serine Consolino
Aegis Law Group LLP
801 Pennsylvania Ave., N.W., Suite 740
Washington, DC 20004
sconsolino@aegislawgroup.com

**Re: Response to July 22, 2025 Letter Regarding Splash Platform**

Dear Ms. Consolino,

We are in receipt of your July 22, 2025 letter. We disagree with a number of assertions contained therein, including the implication that CrowdStrike has failed to engage in good faith or that any confidential information was used or retained by a third party.

Following Cvent's initial outreach, we followed up with the relevant parties and reviewed the facts. As previously stated, limited, view-only access was granted for the narrow purpose of supporting a system migration. The access was brief, and we are aware of no use, retention, or dissemination of proprietary Splash or Cvent information. Our understanding is that a single Zuddl employee accessed the Splash platform on for a limited duration—approximately 30 minutes and two to three logins—for the sole purpose of viewing landing pages and registration confirmation emails needed to replicate CrowdStrike-owned event content – i.e., content that event attendees would have seen, not confidential information. That access was promptly removed.



While we believe the matter does not warrant further escalation, we remain willing to discuss it with you. I will be traveling the week of August 4 but am available for a call the week of August 11.

Sincerely,

Jee Young You

**jee young you**
**crowdstrike** assistant general counsel, litigation
**e.** jeeyoung.you@crowdstrike.com